# **EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RIMMAX WHEELS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RC COMPONENTS, INC., a Kentucky corporation,<br><br>Defendant. | C.A. No. 06-029 (SLR) |

### RC COMPONENTS, INC.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFF RIMMAX WHEELS, LLC

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), RC Components, Inc., ("RC"), by and through its undersigned counsel, hereby requests that plaintiff Rimmax Wheels, LLC ("Rimmax") produce for inspection and copying the following documents at the offices of **Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, DE 19801** within thirty (30) days of the date of service hereof.

### DEFINITIONS

1.      The term "RC Components," "RC," or "Defendant," means the above-captioned Defendant, all of its respective current and former subsidiaries, parents, affiliates, joint ventures, divisions and related funds, together with all of their present or former attorneys, agents, representatives and other persons (as defined herein) acting on their behalf.

2.      The term "Plaintiff," "Rimmax Wheels," "Rimmax," "You," or "Your" means Rimmax Wheels, LLC, together with all of his attorneys, agents, representatives and other Persons (as defined herein) acting on his behalf.

3.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, including but not limited to, any meeting, conversation, discussion, conference, correspondence, message, or other written or oral transmission, exchange, or transfer of information in any form between two or more persons, including in person or by telephone, facsimile, telegraph, telex, e-mail or other medium.

4.    The term "Complaint" means the complaint filed by Plaintiff in the United States District Court for the District of Delaware and assigned civil action number 06-029.

5.    The terms "document" or "documents" shall have the broadest meaning permitted under the Federal Rules and includes, without limitation, all originals, copies (if the originals are not available), non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise) and drafts of the following items, whether printed or recorded (through a sound, video or other electronic, magnetic or digital recording system) or reproduced by hand, including but not limited to letters, correspondence, telegrams, telexes, memoranda, records, summaries of personal conversations or interviews, minutes or records or notes of meetings or conferences, note pads, notebooks, postcards, "Post-It" notes, stenographic notes, notes, notebooks, opinions or reports of financial advisors or consultants, opinions or reports of experts, projections, financial or statistical statements or compilations, contracts, agreements, appraisals, analyses, purchase orders, confirmations, publications, articles, books, pamphlets, circulars, microfilm, microfiche, reports, studies, logs, surveys, diaries, calendars, appointment books, maps, charts, graphs, bulletins, photostats, speeches, data sheets, pictures, photographs, illustrations, blueprints, films, drawings, plans, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-produced interpretations or transcriptions thereof, electronically transmitted messages ("E-mail"), voice

mail messages, interoffice communications, advertising, packaging and promotional materials and any other writings, papers and tangible things of whatever description whatsoever, including but not limited to any information contained in any computer, even if not yet printed out, within the possession, custody or control of Plaintiff.

6.    The term "person(s)" means natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

7.    The phrases "refer to," "referring to," "relate to" or "relating to," as used herein, shall each mean to consist of, constitute, contain, concern, comprise, comment upon, describe, evidence, embody, reflect, identify, state, summarize, deal with, refer to, memorialize, pertain to or have any logical or factual connection whatsoever with the subject to which the Request (as defined herein) refers, regardless of whether the connection is favorable or adverse to You.

8.    The term "spinner(s)" means motorcycle rims that have an ornamental design on the wheel face which rotates while the motorcycle is in motion and which Plaintiff alleges it invented. Instructions.

## INSTRUCTIONS

1.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any information which might otherwise be construed as outside their scope.

2.    "All" and "each" shall be construed as "any and all" and "each and all."

3.    The past tense of a verb shall include the present and the present tense shall include the past.

4.      Whenever appropriate in these requests, the singular and plural forms of words shall be interpreted interchangeably so as to bring within the scope of these requests any matter which might otherwise be construed to be outside of their scope.

5.      These Document Requests are continuing in nature in accordance with Rule 26(e) of the Federal Rules.

6.      If an objection is interposed to any of the following document requests, the objection should state with specificity all bases and grounds for the objection.

7.      If You object to any of the requests herein, whether in whole or in part, on the grounds that the information sought therein is privileged or otherwise protected from discovery, state the following:

(a)     identify the privileged document or communication;

(b)     identify the persons who received or will have received the privileged document and/or the persons present during the privileged communication;

(c)     identify the person who drafted or made the privileged document or communication;

(d)     identify the general subject of the privileged document or communication; and

(e)     set forth the factual and legal basis for the claimed privilege in sufficient detail to permit the Court to adjudicate the validity of such claim.

## REQUESTS

REQUEST NO. 1    All documents identified in, relied upon or used in drafting Plaintiff's answers to the Interrogatories and Requests for Admission served by RC on Plaintiff contemporaneously with this request for Production of Documents.

REQUEST NO. 2    All documents identified in, relied upon or used in drafting the Complaint or prior versions thereof.

REQUEST NO. 3    All documents concerning any or all of the allegations in the Complaint, including but not limited to documents concerning:

(a)    the allegations in paragraph 1 of the Complaint that, RC "did not honor the agreement" not to use any confidential information or proprietary technology Plaintiff disclosed to RC for any purpose other than manufacturing the spinners.

(b)    the allegations in paragraph 1 of the Complaint that, RC "failed to deliver to [P]laintiff all spinners for which plaintiff paid."

(c)    the allegations in paragraph 3 of the Complaint that, "the amount in controversy exceeds the jurisdictional limit."

(d)    the allegations in paragraph 4 of the Complaint that, "a substantial part of the events or omissions giving rise to plaintiff's claims occurred within the judicial district of the U.S. District Court for the District of Delaware."

(e)    the allegations in paragraph 13 of the Complaint that "[i]n or about 2002, Rivers and Mathis invented the spinners."

(f)    the allegations in paragraph 16 of the Complaint, that "Plaintiff told Cooper that before [P]laintiff could discuss its spinner with RC or any of its representatives RC

must sign a written agreement promising plaintiff that RC would not use the confidential information and proprietary technology plaintiff disclosed to RC for any purpose other than manufacturing plaintiff's invention."

(g)    the allegations in paragraph 23 of the Complaint, that "[Rick] Ball and Chuck [Skarsaune] received some of plaintiff's confidential information and proprietary information."

(h)    the allegations in paragraph 24 of the Complaint, that "[Rick] Ball 'encouraged' Rivers and Mathis to discuss plaintiff's marketing plans and 'discouraged' Rivers and Mathis by telling them they likely would only be able to sell one set of spinners per week."

(i)    the allegations in paragraph 29 of the Complaint, that "RC frequently telephoned [P]laintiff . . . speaking with Rivers about the technical aspects of plaintiff's spinners. This phase of the manufacturing process required plaintiff to disclose all of plaintiff's confidential information and proprietary technology about the technical aspects of plaintiff's invention."

(j)    the allegations in paragraph 35 of the Complaint that, "Plaintiff declined RC's invitation to enter into this business arrangement, and informed RC that [P]laintiff already was marketing plaintiff's spinners, including via advertisements in Cycle Dreams Magazine.

(k)    the allegations in paragraph 36 of the Complaint, that "RC told plaintiff that RC would make 54 sets of spinners for plaintiff, and deliver the sets to plaintiff by late April 2003, if plaintiff gave to RC $80,000."

- 6 -

(l)     the allegations in paragraph 38 of the Complaint, that "RC asked plaintiff to send to RC plaintiff's detailed order list and customer shipping addresses so that RC could ship the spinners to plaintiff's customers."

(m)     the allegations in paragraph 44 of the Complaint, that "RC ignored [P]laintiff's specific direction about the packaging."

(n)     the allegations in paragraph 46 of the Complaint, that "RC refuses and has failed to deliver 34 of the 54 sets of [P]laintiff's spinners for which [P]laintiff paid in full."

(o)     the allegations in paragraph 49 of the Complaint, that "[P]laintiff recently discovered RC has been communicating with [P]laintiff's customers, telling them to buy spinners from RC rather than plaintiff, and selling [P]laintiff's spinners to [P]laintiff's customers and other third parties."

(p)     the allegations in paragraph 51 of the Complaint, that "[t]he spinners RC advertises it sells, and that it does sell, is the same spinner invented by [P]laintiff."

(q)     the allegations in paragraph 57 of the Complaint, that "there was a legally binding agreement between plaintiff and defendant . . . . There was . . . sufficiently specific terms that determine the obligations of each party" such that there was a valid contract between Plaintiff and RC regarding the manufacturing of the spinners.

(r)     the allegations in paragraph 58 of the Complaint, that "Plaintiff fully performed all its obligations under the agreement, by paying to defendant the amounts requested to do the work [P]laintiff requested."

(s)     the allegations in paragraph 59 of the Complaint, that "[RC] breached the agreement when it failed to timely deliver to [P]laintiff 54 sets of spinners for which [P]laintiff had paid."

(t)     the allegations in paragraph 60 of the Complaint, that "[RC] breached the agreement when it failed to return to plaintiff its confidential information and proprietary technology."

(u)     the allegations in paragraph 61 of the Complaint, that RC "failed to return to plaintiff its confidential information and proprietary technology."

(v)     the allegations in paragraph 62 of the Complaint, that RC "unfairly took advantage of plaintiff's knowledge."

(w)     the allegations in paragraph 63 of the Complaint, that RC "used [P]laintiff's confidential information and proprietary technology."

(x)     the allegations in paragraph 65 of the Complaint, that Plaintiff has suffered "injuries and losses."

(y)     the allegations in paragraph 67 of the Complaint, that "[RC] made false representations of fact that were important to [P]laintiff."

(z)     the allegations in paragraph 68 of the Complaint, that "[RC] used [P]laintiff's property for defendant's economic benefit and to plaintiff's detriment."

(aa)     the allegations in paragraph 69 of the Complaint, that "[RC] falsely represented that it needed plaintiff's detailed order list and customer shipping addresses so that it could ship the spinners directly to plaintiff's customers."

(bb)     the allegations in paragraphs 70 through 72 of the Complaint.

- 8 -

(cc)     the allegations in paragraph 73 of the Complaint, that "Plaintiff has been damaged as a result of this reliance."

(dd)     the allegations in paragraph 77 of the Complaint, that "[RC] intentionally and improperly induced or otherwise intentionally caused third parties not to perform their contracts with [P]laintiff when [RC] told these third parties not to purchase spinners from [P]laintiff and to purchase spinners from [RC]."

(ee)     the allegations in paragraph 79 of the Complaint, that "[RC] intentionally and improperly induced or otherwise intentionally prevented [P]laintiff from performing its contracts with third parties or made the performance of [P]laintiff's contracts with third parties more costly when [RC] failed to timely deliver 54 sets of spinners and completely failed to deliver 34 of the 54 sets for which [P]laintiff had paid."

(ff)     the allegations in paragraph 81 of the Complaint, that "[RC] purposely and improperly induced or otherwise purposely caused third parties not to enter into or continue prospective contractual relations with [P]laintiff when [RC] failed to timely deliver 54 sets of spinners and when [RC] sold spinners under [RC's] logo or brand name."

(gg)     the allegations in paragraph 83 of the Complaint, that "[RC's] interference with [P]laintiff's contractual relations caused injuries and losses to [P]laintiff."

REQUEST NO. 4     To the extent not produced in response to the previous requests, produce all documents and communications that refer or relate to Plaintiff's assertion that it paid in full for the parts and inventory RC was required to purchase to manufacture the spinners ordered by Plaintiff.

- 9 -

REQUEST NO. 5    To the extent not produced in response to the previous requests, produce all documents and communications that refer or relate to Plaintiff's assertion that RC agreed that Plaintiff's payment of $80,000 would constitute full payment for RC's purchase of inventory for, and manufacture of, the spinners that Plaintiff ordered from RC.

REQUEST NO. 6    To the extent not produced in response to the previous requests, produce all documents and communications that indicate, reveal, show, prove or otherwise establish that Plaintiff was not required to pay for the inventory RC purchased to manufacture the spinners Plaintiff ordered.

REQUEST NO. 7    To the extent not produced in response to the previous requests, produce all documents and communications, including any drafts, that refer or relate to the Supply Agreement, which has a listed effective date of October 7, 2002, and executed by Plaintiff but not RC.

REQUEST NO. 8    To the extent not produced in response to the above requests, produce all documents and communications referring or relating to Plaintiff's assertion that it has a patent on the spinners.

REQUEST NO. 9    To the extent not produced in response to the above requests, produce all documents and communications referring or relating to Plaintiff's claim of injury or damages.

REQUEST NO. 10    To the extent not produced in response to the above requests, produce all documents and communications that refer or relate to the location of Plaintiff's business.

REQUEST NO. 11    To the extent not produced in response to the above requests, produce all documents and communications referring or relating to the investigation by the Delaware Department of Justice of Plaintiff, Michael Rivers Jr., or Marc C. Mathis.

REQUEST NO. 12    To the extent not produced in response to the above requests, produce all documents and communications referring or relating to Plaintiff's order to RC for the design and manufacture of the spinners.

REQUEST NO. 13    To the extent not produced in response to the above requests, produce all documents and communications referring or relating to Plaintiff's use, disposition, or transfer of any of the money Plaintiff received from its "customers" for the purchase of spinners manufactured by RC.

REQUEST NO. 14    Produce all documents that refer or relate in any way to any interview conducted by Plaintiff or on Plaintiff's behalf with respect to the allegations described in the Complaint.

REQUEST NO. 15    Produce all documents provided to, that will be provided to, reviewed by, or that will be reviewed by, any person whom Plaintiff intends to call as a witness at or in connection with the trial or other evidentiary hearing in this case.

REQUEST NO. 16    With respect to each person whom Plaintiff expects to call as an expert witness at or in connection with the trial or other evidentiary hearing in this case:

(a)    all documents Plaintiff has provided or will provide to the expert for his/her review;

(b)    a current curriculum vitae, resume and any other documents which describe the expert's qualifications;

- 11 -

(c)    all reports or other documents produced by, or that will be produced by, the expert which express any findings, conclusions and/or opinions about any of the issues in this case;

(d)    all documents upon which the expert's findings, conclusions and/or opinions are, or will be, based; and

(e)    all exhibits to be used as a summary of or support for the expert's findings, conclusions and/or opinions.

REQUEST NO. 17    All documents that Plaintiff intends to introduce into evidence at the trial of this action.

Dated: July 5, 2006
        Wilmington, Delaware                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

William H. Sudell, Jr. (#463)
Curtis S. Miller (#4583)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

Attorneys for Defendant RC Components, Inc.

524406

- 12 -

## CERTIFICATE OF SERVICE

I, Curtis S. Miller, certify that I am not less than 18 years of age, and that service of the foregoing **RC Components, Inc.'s First Request For Production Of Documents Directed To Plaintiff Rimmax Wheels, LLC**, was caused to be made on July 5, 2006, in the manner indicated upon the entities listed below.

Date:  July 5, 2006

_____
Curtis S. Miller (No. 4583)

## BY HAND DELIVERY

Kester I.H. Crosse, Esq.
Williams & Crosse
1214 King Street
Suite 300
Wilmington, DE  19801

## BY FIRST CLASS U.S. MAIL & ELECTRONIC MAIL

Anne T. Sulton
Sulton Law Offices
Post Office Box 2763
Olympia, WA  98507