**EXHIBIT C**

WHS

AUG 15 2006

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RIMMAX WHEELS, LLC a<br>Delaware limited liability company | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | |
| | ) | C.A. No. 06-029 (SLR) |
| RC COMPONENTS, INC., a<br>Kentucky corporation, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S RESPONSE TO THE DEFENDANT'S
### FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiffs hereby respond and makes the following objections to Defendants Requests for Production of Documents. Plaintiffs reserve all objections to the competency, relevancy, materiality, or admissibility at any hearing or trial of any responses to the propounded document requests, or to any documents or things produced in response thereto, and reserves the right to amend, modify, or supplement its responses or objections herein, or to move for a protective order.

### GENERAL OBJECTIONS

A.  Plaintiff objects to Defendant's requests to the extent they seek, or may be construed to seek confidential or proprietary information unless and until an appropriate protective Order governing the disposition of such information has been entered by the Court. Any confidential information provided by Plaintiffs in this action, and documents reflecting such information, shall be subject to such a Protective Order.

B. Plaintiff further objects to Defendants requests to the extent they seek, or may be construed to seek, information that is immune from discovery by reason of the attorney-client privilege or the work product doctrine or other privilege or immunity. Plaintiffs will not produce documents or information protected by any such applicable privilege. Nothing contained in this response is intended to be nor should be considered a waiver of any attorney-client privilege, community of interest privilege, work product, and/or Rule 26(b) (4) (B) protection, or any other applicable privilege or doctrine, and to the extent any request may be construed as calling for disclosure of information or documents protected by such privilege or doctrines, a continuing objection to each and every such request is hereby imposed.

C. Plaintiff further objects t Defendant's requests as overly broad and unduly burdensome to the extent they seek, or may be construed to seek, information or documents that are publicly available, already in Defendant's possession, custody, control, or available to Defendants from sources other than Plaintiff than are more convenient, less burdensome, or less expensive.

D. Plaintiff responds to Defendants requests based on the information available to them after a reasonable investigation. Plaintiff reserves the right to supplement or amend their responses.

E. Plaintiff objects to each of the requests, as Defendant has not allowed a reasonable time for Plaintiff to comply with the requests.

F. Any response provided herein that states that documents or things will be produced is to be construed as referring only to non-privileged, non-work product documents that are not otherwise subject to the general objections or any specific

objection. Moreover, such statement is not a representation, acknowledgement, or admission that any such documents exist, but rather that such documents that are located in a reasonable search of Plaintiff's files will be produced.

## REQUESTS

REQUEST NO. 1.  All documents identified in, relied upon or used in drafting Plaintiff's answers to the Interrogatories and Requests for Admission served by RC on Plaintiff contemporaneously with this request for Production of Documents.

RESPONSE 1.

(a) Non Disclosure agreement dated August 20, 2002.

(b) Price quote dated October 2, 2002.

(c) Three design patents issued in 2003 filed 2002.

(d) Letter from Patrick L. Mixon, Esquire to Rick Ball dated July 2, 2003.

(e) Supply agreement dated 2002

(f) Fax from RC Components dated April 18, 2003.

(g) Rimmax Wheels Priority List Change.

(h) Copy of check dated June 10, 2003 to RC Components for $20,000.00

(i) Copy of check dated October 9, 2002 to RC Components for $7,227.50

(j) Copy of check dated May 21, 2003 to RC Components for $44,000.00

(k) Copy of check dated April 5, 2003 to RC Components for $121.40.

(l) Copy of check dated May 7, 2003 to RC Components for 20,000.00.

(m) Copy of check dated April 4, 2003 to RC Components for $10,520.50.

(n) Fax from RC Components, dated February 13, 2003  - Re  quote and work order.

REQUEST NO. 2.  All documents identified in, relied upon or used in drafting the Complaint or prior versions thereof.

RESPONSE NO. 2.  See documents produced in Response No. 1.

REQUEST NO. 3.  All documents concerning any or all of the allegations in the Complaint, including but not limited to documents concerning:

(a)  the allegations in paragraph 1 of the Complaint that RC "did not honor the agreement" not to use any confidential information or proprietary technology Plaintiff disclosed to RC for any purpose other than manufacturing the spinners.

(b)  the allegations in paragraph 1 of the Complaint that, RC "failed to deliver to Plaintiff all spinners for which plaintiff paid."

(c)  the allegations in paragraph 3 of the Complaint that, the amount in controversy exceeds the jurisdictional limit."

(d)  the allegations in paragraph 4 of the Complaint that, "a substantial part of the events or omissions giving rise to plaintiff's claims occurred within the judicial district of the U.S. District Court for the District of Delaware."

(e)  the allegations in paragraph 13 of the Complaint that on or about 2002, Rivers and Mathis invented the spinners."

(f)  the allegations in paragraph 16 of the Complaint, that "Plaintiff told Cooper tht before Plaintiff could discuss its spinner with RC or any representatives of RC must sign a written agreement promising plaintiff that RC would: not use the confidential information and proprietary technology Plaintiff disclosed to RC for any purpose other than manufacturing plaintiff's invention."

(g) the allegations in paragraph 23 of the Complaint, that "Rick Ball and Chuck (Skarsaune) received some of plaintiff's confidential information and proprietary information."

(h) the allegations in paragraph 24 of the Complaint, that "Rick Ball encouraged" Rivers and Mathis to discuss plaintiff's marketing plans and discouraged Rivers and Mathis by telling them they likely would only be able to sell one set of spinners per week."

(i) the allegations in paragraph 29 of the Complaint, that "RC frequently telephoned Plaintiff. . . speaking with Rivers about the technical aspects of plaintiff's spinners. This phase of the manufacturing process required plaintiff to disclose all of plaintiff's confidential information and propriety technology about the technical aspects of plaintiff's invention."

(j) the allegations in paragraph 35 of the Complaint that, "Plaintiff declined RC's invitation to enter ito this business arrangement, and informed RC that Plaintiff already was marketing plaintiff's spinners, including via advertisements in Cycle Dreams Magazine.

(k) the allegations in paragraph 36 of the Complaint, that "RC told plaintiff that RC would make 54 sets of spinners for plaintiff, and deliver the sets to plaintiff by late April 2003, if plaintiff gave to RC $80,000.00.

(l) the allegations to paragraph 38 of the Complaint, that "RC asked plaintiff to send to RC plaintiff's detailed order list and customer shipping addresses so that RC could ship the spinners to Plaintiff's customers."

(m)allegations in paragraph 44 of the Complaint, that "RC ignored Plaintiff's

specific direction about the packaging.

(n)  the allegations in paragraph 46 of the Complaint, that "RC refuses and has failed to deliver 34 of the 54 sets of Plaintiff's spinners for which Plaintiff paid in full."

(o)  the allegations in paragraph 49 of the Complaint, that "Plaintiff recently discovered RC has been communicating with Plaintiff's customers, telling them to buy spinners from RC rather than plaintiff, and selling Plaintiff's spinners to Plaintiff's customers and other third parties."

(p)  the allegations in paragraph 51 of the Complaint, that "the spinners RC advertises it sells, and that it does sell, is the same spinner invested by Plaintiff.

(q)  the allegations in paragraph 57 of the Complaint, that "here was a legally binding agreement between plaintiff and defendant. . . . There was . . . sufficiently specific terms that determine the obligations of each party" such that there was a valid contract between Plaintiff and RC regarding the manufacturing of the spinners.

(r)  the allegations in paragraph 58 of the Complaint, that "Plaintiff fully performed all its obligations under the agreement, by paying to defendant the amounts requested to do the work Plaintiff requested.

(s)  the allegations in paragraph 59 of the Complaint, that "RC breached the agreement when it failed to timely deliver to Plaintiff 54 sets of spinners for which Plaintiff had paid."

(t)  the allegations in paragraph 60 of the Complaint, that "RC breached the agreement when it failed to return to Plaintiff its confidential information and proprietary technology."

(u)  the allegations in paragraph 61 of the Complaint, that RC "failed to return to plaintiff its confidential information and proprietary technology."

(v)  the allegations in paragraph 62 of the Complaint, that RC "unfairly took advantage of plaintiff's knowledge."

(w)  the allegations in paragraph 63 of the Complaint, that RC "used Plaintiff's confidential information and proprietary technology."

(x)    the allegations in paragraph 65 of the Complaint, that Plaintiff has suffered "injuries and losses".

(y)  the allegations in paragraph 67 of the complaint, that "RC made false representations of fact that were important to Plaintiff.

(z)  the allegations in paragraph 68 of the Complaint, that "RC used Plaintiff's property for defendant's economic benefit and to plaintiff's detriment."

(aa)  the allegations in paragraph 69 of the Complaint, that "RC falsely represented that it needed Plaintiff's detailed order list and customer shipping addresses so that it could ship the spinners directly to plaintiff's customers.

(bb)  the allegations in paragraphs 70through 72 of the Complaint.

(cc)  the allegations in paragraph 73 of the Complaint, that "Plaintiff has been damaged as a result of this reliance."

(dd)  the allegations in paragraph 77 of the Complaint, that "RC intentionally and improperly induced or otherwise intentionally caused third parties not to perform their contracts with Plaintiff when RC told these third parties not to purchase spinners from Plaintiff and to purchase spinners from RC."

7

(ee)  the allegations in paragraph 79 of the Complaint, that "RC intentionally and improperly induced or otherwise intentionally prevented Plaintiff from performing its contracts with third parties or made the performance of Plaintiff's contracts with third parties more costly when RC failed t timely deliver 54 sets of spinners and completely failed to deliver 34 of the 54 sets for which Plaintiff had paid."

(ff)  the allegations in paragraph 81 of the Complaint, that "RC purposely and improperly induced or otherwise purposely caused third parties not to enter into or continue prospective contractual relations with Plaintiff when RC failed t timely deliver 54 sets of spinners and when RC sold spinners under RC's logo or brand name."

(gg)  the allegations in paragraph 83 of the Complaint, that "RC's interference with Plaintiff's contractual relations caused injuries and losses to Plaintiff.

RESPONSE 3.  Plaintiff objects to this Discovery request to the extent that it is overly broad, unduly burdensome and has been produced in Response No. 1.

REQUEST NO. 4.  To the extent not produced in response to the previous requests, produce all documents and communications that refer or relate to Plaintiff's assertion that it paid in full for the parts and inventory RC was required to purchase to manufacture the spinners ordered by Plaintiff.

RESPONSE NO. 4.  Plaintiff incorporates its general objection to this request and by way of further answer references Response No. 1.

REQUEST NO. 5.  To the extent not produced in response to the previous requests, produce all documents and communications that refer or relate to Plaintiff's assertion that RC agreed that plaintiff's payment of $80,000.00 would constitute full

payment for RC's purchase of inventory for, and manufacture of, the spinners that Plaintiff ordered from RC.

RESPONSE NO. 5.  Plaintiff objects to this discovery request to the extent that it is vague, ambiguous, or otherwise incomprehensible.

REQUEST NO. 6.  To the extent not produced in response to the previous requests, produce all documents and communications that indicate, reveal, show, prove or otherwise establish that Plaintiff was not required to pay for the inventory RC purchased to manufacture the spinners Plaintiff ordered.

RESPONSE NO. 6.  Plaintiff objects to this discovery request to the extent that it is vague, ambiguous, or otherwise incomprehensible.

REQUEST NO. 7.  To the extent not produced in response to the previous requests, produce all documents and communications, including any drafts, that refer or relate to the Supply Agreement, which has a listed effective date of October 7, 2002, and executed by Plaintiff but not RC.

RESPONSE NO. 7.  Plaintiff objects to this discovery request to the extent that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the issues raised in the Complaint filed in the above captioned proceedings, nor reasonable calculated to lead to the discovery of admissible evidence.  By way of further answer, Plaintiffs refer to Response No. 1.

REQUEST NO.  8.  To the extent not produced in response to the above requests, produce all documents and communications referring or relating to Plaintiff's assertion that it has a patent on the spinners.

RESPONSE NO. 8.  Plaintiff objects to this discovery request to the extent that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the issues raised in the Complaint filed in the above captioned proceedings, nor reasonable calculated to lead to the discovery of admissible evidence.  By way of further answer, Plaintiffs refer to Response No. 1.

REQUEST NO. 9.  To the extent not produced in response to the above requests, produce all documents and communications referring or relating to Plaintiff's claim of injury or damages.

RESPONSE NO. 9.  In providing its response to this discovery request, Plaintiff does not waive, and expressly reserves, all objections as to competency, relevancy, materiality and admissibility thereof, as well as all objections to any other discovery request.

REQUEST NO. 10.  to the extent not produced in response to the above requests, produce all documents and communications that refer or relate to the location of Plaintiff's business.

RESPONSE NO. 10.  Plaintiff objects to this discovery request to the extent that it is vague, ambiguous or otherwise incomprehensible.

REQUEST NO. 11.  To the extent not produced in response to the above requests, produce all documents and communications referring or relating to the investigation by the Delaware Department of Justice of Plaintiff, Michael Rivers, Jr. or Marc C. Mathis.

RESPONSE NO. 11.  Plaintiff objects to this discovery request to the extent that

it is overly broad, unduly burdensome or seeks information that is neither relevant to the issues raised in the complaint filed in the above captioned proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 12.  To the extent not produced in response to the above requests, produce all documents and communications referring or relating to Plaintiff's order to RC for the design and manufacture of the spinners.

RESPONSE NO. 12.  Plaintiff incorporates its general objections to Defendant's Request for Production.  By way of further answer, Plaintiff directs Defendant to Response No. 1.

REQUEST NO. 13.  To the extent not produced in response to the above requests, produce all documents and communications referring or relating to Plaintiff's use, disposition, or transfer of any of he money Plaintiff received from its "customers for the purchase of spinners manufactured by RC.

RESPONSE NO. 13.  Plaintiffs object to this discovery request to the extent that it is overly broad, unduly burdensome, or seeks information that is neither relevant to the issues raised in the complaint filed in the above captioned proceeding, nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 14.  Produce all documents that refer or relate in any way to any interview conducted by Plaintiff or on Plaintiff's behalf with respect to the allegations described in the Complaint.

RESPONSE NO. 14.  Plaintiff objects to this discovery request in that it violates the attorney-client, work product privilege.

REQUEST NO. 15. Produce all documents provided to, that will be provided to, reviewed by, or that will be reviewed by, any person whom Plaintiff intends to call as a witness at or in connection with the trial or other evidentiary hearing in this case.

RESPONSE NO. 15. Plaintiff objects to this discovery request to the extent that it is overly broad, unduly burdensome, or seeks information that is neither relevant to the issues raised in the complaint filed in the above captioned proceeding, nor reasonably calculated to lead to the discovery and admissible evidence. By way of further answer, Plaintiff directs Defendant to Response No. 1.

REQUEST NO. 16. With respect to each person whom Plaintiff expects to call as an expert witness at or in connection with the trial or other evidentiary hearing in this case:

(a) all documents Plaintiff has provided or will provide to the expert for his/her review;

(b) a current curriculum vitae, resume and any other documents which describe the expert's qualifications.

(c) all reports or other documents produced by, or that will be produced by, the expert which express any findings, conclusions and/or opinions about any of the issues in this case;

(d) all documents upon which the expert's findings, conclusions and/or opinions are, or will be, based; and

(e) all exhibits to be used as a summary of or support for the expert's findings, conclusions and/or opinions.

RESPONSE NO. 16.  Plaintiff objects to the discovery request to the extent that is overly broad, unduly burdensome, violates the attorney-client privilege and work product privilege and is neither relevant to the issues raised in the complaint filed in the above proceeding, nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 17.  All documents that Plaintiff intends to introduce into evidence at the trial of this action.

RESPONSE NO. 17.  See the documents listed in Response No. 1.


Kester I.H. Crosse, Esquire (#638)
Williams & Crosse
1214 King Street
Wilmington, Delaware  19801
(302) 652-3141


/s/ Anne T. Sulton, Esquire
Anne T. Sulton, Esquire
Sulton Law Offices
Post Office Box 2763
Olympia, WA  98507

Attorneys for Plaintiff Rimmax Wheels, LLC

13

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

RIMMAX WHEELS, LLC a   )
Delaware limited liability company

             )

   Plaintiff,      ) C.A. No. 06-029 (SLR)

vs.            )

RC COMPONENTS, INC.,   )
a Kentucky corporation

             )

   Defendant.

             )

## A F F I D A V I T

STATE OF DELAWARE

NEW CASTLE COUNTY

   BE IT REMEMBERED that on this <u>15th</u> day of <u> August </u>, 2006,

personally appeared before me, the subscriber, a Notary Public for the County and State

aforesaid, Marc C. Mathis of Rimmax Wheels, LLC, who being by me duly sworn

according to law deposes and says that  Plaintiff's Response to the Defendant's First

Request for Production of Documents  are true and correct.

         _Marc C. Mathis_
         MARC C. MATHIS

   SWORN TO AND SUBSCRIBED before me a Notary public for the State and

County aforesaid, the day and year aforesaid.

         _____
         NOTARY PUBLIC

          KESTER I. H. CROSSE
           Attorney at Law
           State of Delaware
        Notarial Officer Pursuant to
        29 Del. C. §4323(a)(1)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

RIMMAX WHEELS, LLC, a                )
Delaware limited liability company

      Plaintiff,                              )

vs.                                                  )   C.A. No.  06-029 (SLR)

                             )

RC COMPONENTS, INC., a            )
Kentucky corporation,

      Defendant.                            )

## CERTIFICATE OF SERVICE

On this ___15th__ day of ___August___, 2006, I, Kester I.H. Crosse, Esquire,

certify that service of the foregoing Plaintiff's Response to the Defendant's First Request

for Production of Documents  was caused to be made in the manner indicated upon

the entities listed below:


        By Hand Delivery

        William H. Sudell, Jr., Esquire (#463)
        Curtis S. Miller Esquire (#4583)
        Morris, Nichols, Arsht & Tunnell LLP
        1201 N. Market Street
        P.O. Box 1347
        Wilmington, Delaware 19899-1347


Kester I.H. Crosse, Esquire (#638)
Williams and Crosse
1214 King Street
Wilmington, Delaware  19801

# RIMMAX WHEELS, LLC  v.  RC COMPONENTS, INC.

## RESPONSE 1

    (a)      Non Disclosure Agreement dated August 20, 2002.

    (b)      Price Quote dated October 2, 2002.

    (c)      Three design patents issued in 2003 filed 2002.

    (d)      Letter from Patrick L. Mixon, Esquire to Rick Ball dated July 2, 2003

    (e)      Supply Agreement dated 2002.

    (f)      Fax from RC Components dated April 18, 2003.

    (g)      Rimmax Wheels priority list change.

    (h)      Copy of check dated June 10, 2003 to RC Components for $ 20,000.00.

    (i)      Copy of check dated October 9, 2002 to RC Components for $ 7,227.50.

    (j)      Copy of check dated May 21, 2003 to RC Components for $ 44,000.00.

    (k)      Copy of check dated April 5, 2003 to RC Components for $ 121.40.

    (l)      Copy of check dated May 9, 2003 to RC Components for $ 20,000.00.

    (m)      Copy of check dated April 4, 2003 to RC Components for $ 10,520.50.

    (n)      Fax from RC Components dated February 13, 2003 regarding quote and work order.

# EXHIBIT A

## AGREEMENT REGARDING CONFIDENTIAL
## INFORMATION AND INTELLECTUAL PROPERTY

42208  vml

This is an Agreement between RiMMax Wheel, LLC organized under the laws of the state of Delaware (hereinafter "Owner"), and RC Components, [organ]ized under the laws of the state of Delaware having a place of business at 1300   Fairview Dr. Suite # J 35, Dover, DE 19904(hereinafter "Recipient")RC Components, 373 Mitch McConnell Way, Bowling Green, KY 42104 (collectively the "Parties").

### AVERMENTS

Owner has developed or otherwise obtained certain confidential information and proprietary technology relating to its spinning rim for a motorcycle ("hereinafter "spinning rim").

Owner and Recipient have entered into business discussions and/or business negotiations regarding Owner's spinning rim. During the course of the discussions and/or negotiations it may be necessary that Recipient be made aware of confidential information and proprietary information belonging to Owner.

Owner does not wish to lose the confidentiality of, or diminish its rights in, the confidential information and proprietary information, and requires assurances that its rights therein will not be diminished or impaired by virtue of its dealings with Recipient. In addition, Owner requires assurances that Recipient will not unfairly take advantage of knowledge Recipient may acquire in accordance with its negotiations with Owner.

In view of the above averments and in consideration of being made aware of the confidential information and proprietary information belonging to Owner, the Recipient agrees to be bound by the terms and conditions contained below.

Accordingly, the Parties pledge and agree as follows:

### DEFINITIONS

1.    "Intellectual Property" means concepts, inventions, technological developments and improvements, mask works, methods, techniques, systems, documentation, data and information (irrespective of whether in human or machine-readable form), works of authorship, and products, whether or not patentable, copyrightable, or susceptible to any other form of protection and whether or not reduced to practice.

2.    "Confidential Information" and "Proprietary Information" mean any and all Intellectual Property and/or information related to the spinning rim in any way, which  (i) is provided to Recipient by Owner, whether communicated to the Recipient by the Owner in writing, orally, or in any other tangible form, (ii) is created, developed, or otherwise generated by or on behalf of Owner, (iii) concerns or relates to any aspect of Owner's business, or (iv) is, for any reason, identified by Owner as confidential or proprietary; except such information which Recipient can show, clearly and convincingly:  (a) is publicly and openly known and in the public domain, (b) becomes publicly and openly known and in the public domain through no fault of Recipient's, or (c) is in

NOTED FOR RECEIPT

Recipient's possession and documented prior to this Agreement, lawfully obtained by Recipient from a source other than from Owner, and not subject to any obligation of confidentiality or restrictions on use.

## TERMS AND CONDITIONS

1.    All Confidential Information, Proprietary Information, and all Intellectual Property embodying or comprising Confidential Information or Proprietary Information is and shall be the sole and exclusive property of Owner. Any Intellectual Property embodying or derived from the Confidential Information or Proprietary Information, or created, conceived or first made in connection with the business discussions and/or business negotiations between Owner and Recipient shall likewise be the sole and exclusive property of Owner. Moreover, Recipient shall not take or cause any action which would be inconsistent with or tend to diminish or impair Owner's rights in Owner's Confidential Information, Proprietary Information or Intellectual Property. Further, Recipient shall not, directly or indirectly, print, copy or otherwise reproduce, in whole or in part, or embody in any product, any Confidential Information without Owner's prior written consent.

2.    Confidential Information and Proprietary Information is revealed to Recipient in strict confidence, and solely for the purpose of assessing (and perhaps performing under) the business relationship. Recipient shall not use, or induce others to use, any Confidential Information or Proprietary Information for any other purpose whatsoever, nor shall it disclose or reveal any Confidential Information or Proprietary Information to anyone except those of Recipient's employees directly involved in the business relationship or business negotiations, with a specific need-to-know, and who have first agreed to be bound by the terms of this Agreement. Recipient acknowledges that in view of the nature of the Confidential Information and Proprietary Information, the geographical scope (universal), and the temporal scope (so long as information qualifies as Confidential Information or Proprietary Information hereunder), the scope of restriction on use and disclosure of the Confidential Information and the Proprietary Information are reasonable. Recipient also acknowledges that any unauthorized disclosure or use of Confidential Information or Proprietary Information would cause Owner immediate and irreparable injury or loss, such that monetary recompense may be inadequate.

3.    Upon Owner's request, Recipient will deliver over to Owner all Confidential Information and Proprietary Information, as well as all documents, media, items and technology comprising, embodying, or relating to the Confidential Information and Propriety Information as well as any other documents or things belonging to Owner that may be in Recipient's possession. Recipient shall not retain any copies.

4.    This Agreement may be amended only in a writing signed by Owner, and there are no other understandings, agreements, or representations, express or implied, relating to the subject matter of this agreement. If any clause or provision of this Agreement is or becomes illegal, invalid, or unenforceable, such clause or provisions shall be interpreted to call for the protection of Owner's rights to the greatest extent which is legal, valid, and enforceable, unless such clause or provision cannot be so interpreted, or a court of competent jurisdiction declines to permit such clause or provision to be so interpreted, in which case such clause or provision shall be severed and the remaining provisions of this Agreement shall continue in full force and effect. This Agreement shall

be governed by and construed in accordance with the laws of the State of Delaware without
reference to the principles of conflict of laws.

Signed:

for or on behalf of RRMax Wheels, LLC

by    _Marc C. Mathis_
      (Type or Print Name)

      _(Signature)_

Title: _Co-Cheif Executive officer_
Date: _8/20/02_


for or on behalf of RC Components _____

by    _Jim Cooper_
      (Type or Print Name)

      _(Signature)_

Title: _Sales Manager_
Date: _8/20/02_

# EXHIBIT B

RC COMPONENTS

PAGE 01



**The Finest Custom Built Performance Wheels**

## PRICE QUOTE
## FOR
## MARC MATHIS AND MIKE RIVERS

Design Time will be billed at $80 per hour.

Design Time is a one-time charge per design of current project.

Current lead time for a pair of wheels is 10-12 weeks from time of deposit.

### Minimum:

Design of center wheel is a 10 piece minimum run per design with a 20 piece minimum per set up.

Hub piece is a 25 piece minimum run for front and rear.

### Pricing

Estimated Design Cost

2 doors per wheel design with 3 designs.  13 hours x $80 = $1040 – 100% deposit
14 hours for front and rear hubs.  14 hours x $80 = $1120 – 100% deposit

Estimated Production Cost
Center Wheel Design @ 20 Pieces      $248 x 20 = $4960 – 50% deposit
Front Hub @ 25 Pieces                $80 x 25 = $2000 – 50% deposit
Rear Hub @ 25 Pieces                 $95 x 25 = $2375 – 50% deposit
Chroming Wheel                       $70 each
Chroming Hub                         $25 each

Wheel Cost Breakdown (does not include your parts listed above)

|                     | Retail | Dealer   | Your Cost |
|---------------------|--------|----------|-----------|
| Front Wheel Polished| $825   | $618.75  | $464.06   |
| Front Wheel Chrome  | $1075  | $806.25  | $604.69   |
| Rear Wheel Polished | $1017  | $762.75  | $572.06   |
| Rear Wheel Chrome   | $1267  | $950.25  | $712.69   |

Total amount of deposit needed to begin production $9331.50

373 Mitch McConnell Way • Bowling Green, KY 42101 • 270-843-1000 • Fax 270-842-0527
www.rccomponents.com • rcc@rccomponents.com

# EXHIBIT C



( 1 of 1 )

**United States Patent**
**Rivers, Jr. , et al.**

*D491,869*
**June 22, 2004**

## Motorcycle rim with spinning spoke

### Claims

The ornamental design for a motorcycle rim with spinning spoke, as shown and described.

Inventors: **Rivers, Jr.; Michael** (9 Ashdale Cir., Newark, DE 19702); **Mathis; Marc C.** (118 Creekmont Ct., Newark, DE 19702)
Appl. No.: **191096**
Filed: **September 30, 2003**

Current U.S. Class:
Intern'l Class: **D12/209**
Field of Search: 1216/
D12/204-213 301/37.101,64,101,65

### References Cited [Referenced By]

#### U.S. Patent Documents

| | | | |
|---|---|---|---|
| D303516 | Sep., 1989 | Arredondo, Jr. | D12/209. |
| D368883 | Apr., 1996 | Rhor | D12/209. |
| D372696 | Aug., 1996 | Tung | D12/209. |
| D372697 | Aug., 1996 | Echazabal et al. | D12/209. |
| D378506 | Mar., 1997 | Stolz et al. | D12/209. |
| D383428 | Sep., 1997 | Brown et al. | D12/209. |
| D384931 | Oct., 1997 | Neeper | D12/209. |
| D386461 | Nov., 1997 | Neeper | D12/209. |
| D397663 | Sep., 1998 | Chrysanto | D12/209. |
| D405747 | Feb., 1999 | Sacco et al. | D12/209. |
| D410616 | Jun., 1999 | Hussaini et al. | D12/209. |
| D419515 | Jan., 2000 | Brown | D12/209. |

| D435821 | Jan., 2001 | Dumigan | D12/209. |
| D445389 | Jul., 2001 | Stach | D12/209. |
| D453135 | Jan., 2002 | Chen | D12/209. |
| D453493 | Feb., 2002 | Kokubu | D12/209. |
| D453723 | Feb., 2002 | Kokubu | D12/209. |
| D454822 | Mar., 2002 | Leutz | D12/209. |
| D476939 | Jul., 2003 | Francis | D12/209. |
| D481341 | Oct., 2003 | Morrison | D12/209. |

*Primary Examiner:* Cadmus: Stacia

### Description

FIG. 1 is a perspective view of a motorcycle rim with spinning spoke in accordance with our new design; and.

FIG. 2 is a side view thereof, the opposite side view being identical thereto.

The broken line showing the environment is for illustrative purposes only and forms no part of the claimed design.

* * * * *





### USPTO PATENT FULL-TEXT AND IMAGE DATABASE

( 1 of 1 )

**United States Patent**                                                                          *D494,522*
**Rivers, Jr., et al.**                                                               **August 17, 2004**

## Motorcycle rim with spinning spoke

### Claims

The ornamental design for a motorcycle rim with spinning spoke, as shown and described.

Inventors: **Rivers, Jr.; Michael** (1300 S. Farmview Dr., Apartment J35, Dover, DE 19904); **Mathis; Marc C.** (118 Creekmont Ct., Newark, DE 19702)

Appl. No.: **182026**
Filed:     **May 19, 2003**

Current U.S. Class:
Intern'l Class:                                                                      **D12/209**
Field of Search:                                                                     1216/
                                                     D12/204-211 301/37.101,64.101,65

### References Cited [Referenced By]

#### U.S. Patent Documents

| | | | |
|---|---|---|---|
| D276717 | Dec., 1984 | Ogishima et al. | D12/211. |
| D372696 | Aug., 1996 | Tung | D12/209. |
| D372697 | Aug., 1996 | Echazabal et al. | D12/209. |
| D378506 | Mar., 1997 | Stolz et al. | D12/209. |
| D383428 | Sep., 1997 | Brown et al. | D12/209. |
| D389101 | Jan., 1998 | Julien | D12/209. |
| D392610 | Mar., 1998 | Noriega | D12/209. |
| D397663 | Sep., 1998 | Chrysanto | D12/209. |
| D405747 | Feb., 1999 | Sacco et al. | D12/209. |
| D415462 | Oct., 1999 | Hussaini et al. | D12/209. |
| D419515 | Jan., 2000 | Brown | D12/209. |
| D436908 | Jan., 2001 | Yeh et al. | D12/209. |

United States Patent D494,522

P. 4

| D438155 | Feb., 2001 | Hanson | D12/209. |
| D476939 | Jul., 2003 | Francis | D12/209. |

*Primary Examiner:* Cadmus: Stacia
*Attorney, Agent or Firm:* Snell & Wilmer LLP, Mixon: Patrick L.

### Description

FIG. 1 is a perspective view of a motorcycle rim with spinning spoke in accordance with our new design: and,

FIG. 2 is a side view thereof, the opposite side view being identical thereto.

The broken line showing of environment is for illustrative purposes only and forms no part of the claimed design.

\* \* \* \* \*





## USPTO PATENT FULL-TEXT AND IMAGE DATABASE

Home    Quick    Advanced    Pat Num    Help

Bottom

View Cart    Add to Cart

Images

( 1 of 1 )

**United States Patent**                                    *D492,635*
**Mathis , et al.**                                          **July 6, 2004**

## Motorcycle rim with spinning spoke

### Claims

The ornamental design for a motorcycle rim with spinning spoke, as shown and described.

Inventors: **Mathis; Marc C.** (118 Creekmont Ct., Newark, DE 19702); **Rivers, Jr.; Michael** (1300 S. Farmview Dr., Apartment J35, Dover, DE 19904)

Appl. No.: **182024**
Filed:    **May 19, 2003**

| | |
|---|---|
| Current U.S. Class: | **D12/209** |
| Intern'l Class: | I216/ |
| Field of Search: | D12/204-211 301/37,101,64,101,65 |

### References Cited [Referenced By]

#### U.S. Patent Documents

| | | | |
|---|---|---|---|
| D351821 | Oct., 1994 | Oka | D12/209. |
| D364843 | Dec., 1995 | Hale, Jr. | D12/209. |
| D366641 | Jan., 1996 | Neeper | D12/209. |
| D384928 | Oct., 1997 | Neeper | D12/209. |
| D385838 | Nov., 1997 | Cullen | D12/209. |
| D385843 | Nov., 1997 | Cullen | D12/209. |
| D388759 | Jan., 1998 | Weld | D12/209. |
| D391544 | Mar., 1998 | Noriega | D12/209. |
| D395633 | Jun., 1998 | Choi | D12/209. |
| D399473 | Oct., 1998 | Hale, Jr. | D12/209. |
| D400489 | Nov., 1998 | McMath | D12/209. |
| D410613 | Jun., 1999 | Brown et al. | D12/209. |

| D410616 | Jun., 1999 | Hussaini et al. | D12/209. |
| D424007 | May., 2000 | Hussaini et al. | D12/209. |
| D427556 | Jul., 2000 | Wang | D12/209. |

*Primary Examiner:* Cadmus; Stacia
*Attorney, Agent or Firm:* Snell & Wilmer LLP, Mixon; Patrick L.

### Description

FIG. 1 is a perspective view of a motorcycle rim with spinning spoke in accordance with our new design; and,

FIG. 2 is a side view thereof, the opposite side view being identical thereto.

The broke line showing of environment is for illustrative purposes only and forms no part of the claimed design.

* * * * *





FIG.1



FIG.2



FIG.1



FIG.2



FIG.1



FIG.2

# EXHIBIT D

# Snell & Wilmer
### L.L.P.
#### LAW OFFICES

One Arizona Center
Phoenix, Arizona 85004-2202
(602) 382-6000
Fax (602) 382-6070
www.swlaw.com

PHOENIX, ARIZONA

TUCSON, ARIZONA

IRVINE, CALIFORNIA

SALT LAKE CITY, UTAH

DENVER, COLORADO

LAS VEGAS, NEVADA

Patrick L. Mixon (602) 382-6274
pmixon@swlaw.com

July 2, 2003

**VIA FIRST CLASS MAIL**
**PROOF OF RECEIPT REQUESTED**
**AND BY FACSIMILE TO 270-842-9527**

Mr. Rick Ball
c/o RC Components
373 Mitch McConnell Way
Bowling Green, Kentucky 42101

Re:   Cancellation of Remaining Spinner Motorcycle Rim Orders for
      RiMMax Wheels, LLC

Dear Mr. Ball:

My client, RiMMax Wheels, LLC, hereby cancels the remaining orders for Spinning Motorcycle Rims not completed by RC Components, as of receipt of this letter.

RiMMax Wheels engaged RC Components to manufacture, chrome, assemble and ship **54** Spinning Motorcycle Rims for various motorcycle brands, at a cost of which included: Freestyle Polished $1918.40, Freestyle Chrome $2378.40, Truth Polished $2754.40, Truth Chrome $3354.40, and Dynasty Chrome $2378.40 per set. To date, RC Components has manufactured, chromed, assembled and shipped **20** sets. In accordance with the above noted cost per set, RiMMax Wheels is to have paid RC Components a total of $52,903.20 (including shipping and additional sprockets) for the aforementioned **20** sets.

As you are aware, to date, RiMMax Wheels has delivered $84,000 payment to RC Components for payment respecting the **20** shipped sets and the remaining **34** Spinning Motorcycle Rims not yet manufactured, chromed or assembled by RC Components. Thus, the payment made by RiMMax Wheels represents an overpayment of $31,096.80, which represents the balance owed to RiMMax Wheels with this cancellation of the remaining orders.

Please send to the below address, a check in the amount of $31,096.80 made payable to RiMMax Wheels, LLC. The check may be sent to:

RiMMax Wheels, LLC
1148 Pulaski Highway, Suite 107-344
Bear, Delaware 19704

Snell & Wilmer is a member of TECHLAW, a leading association of independent law firms.

**Snell & Wilmer**
——— L.L.P. ———

Mr. Rick Ball
RC Components
July 2, 2003
Page 2

My client requests delivery of the above noted check no later than 72 hours from receipt of this letter.

I would also like to take this opportunity to remind you that under the provisions of the mutually agreed upon Non-Disclosure Agreement executed by your agent on <u>August 20, 2002</u>, RC Components is prohibited from unfairly taking advantage of knowledge acquired in accordance with its negotiations with RiMMax Wheels. Any Intellectual Property embodying or derived from the Confidential Information or Proprietary Information, or created, conceived or <u>first made</u> in connection with the business discussions and/or business negotiations between RiMMax Wheels and RC Components shall likewise be the sole and exclusive property of RiMMax Wheels. Further, RC Components shall not, directly or indirectly, print, copy or otherwise reproduce, in whole or in part, or embody in any product, any Confidential Information without RiMMax Wheels's prior written consent. Furthermore, we remind you that RC Components also acknowledges that any unauthorized disclosure or use of Confidential Information or Proprietary Information would cause RiMMax Wheels immediate and irreparable injury or loss, such that monetary recompense may be inadequate.

**In addition to the above, by this document, RiMMax Wheels formally requests that RC Components deliver over to RiMMax Wheels all Confidential Information and Proprietary Information, as well as all documents, media, items (including any design documentation, masks, or manufacturing moids prepared by RC Components with respect to RiMMax Wheels Intellectual Property) and technology comprising, embodying, or relating to the Confidential Information and Propriety Information as well as any other documents or things belonging to RiMMax Wheels that may be in RC Component's possession. RC Components shall not retain any copies.**

Should you have any questions, or which to discuss the above in greater detail, please do not hesitate to contract me at your earliest convenience.

Kindest regards.

Very truly yours,

Snell & Wilmer

Patrick L. Mixon

PLM/gef



U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

O F F I C I A L   U S E

Postage | $ 4.42
Certified Fee |
Return Receipt Fee (Endorsement Required) |
Restricted Delivery Fee (Endorsement Required) |
Total Postage & Fees | $

Postmark Here

Sent To
Rick Ball RC Components
Street, Apt. No.; or PO Box No. 373 Mitch McConnell Way
City, State, ZIP+4 Bowling Green, Kentucky 42101

PS Form 3800, April 2002                See Reverse for Instructions