IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RIMMAX WHEELS, LLC | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-029 (SLR) |
| | : | |
| RC COMPONENTS, INC., | : | **EXHIBIT FILED UNDER SEAL** |
| | : | |
| Defendant. | : | |

**REQUEST OF DEFENDANT RC COMPONENTS, INC. FOR STATUS
CONFERENCE TO ADDRESS PLAINTIFF RIMMAX WHEELS, LLC'S
<u>FAILURE TO PRODUCE DOCUMENTS</u>**

Defendant RC Components, Inc. ("RC") hereby submits this request (the "Request") for a status conference to address the failure of Plaintiff Rimmax Wheels, LLC ("Rimmax" or "Plaintiff") to produce relevant documents that its principals have testified exist and which are responsive to RC's First Request for Production of Documents (the "Document Requests"). In support of this Request, RC respectfully states as follows:

<u>BACKGROUND</u>

A.   <u>Status of Action</u>

1.   On January 13, 2006, Plaintiff filed the Complaint in the above-captioned action.

2.   On May 9, 2006, the Court entered a scheduling order in this case (D.I. 8) (the "Scheduling Order"). The Scheduling Order provides that fact discovery is to be completed by October 2, 2006, and initial expert reports due by November 1, 2006.

B.  <u>Depositions of Rimmax's Principals</u>

3.  On September 25 and 26, 2006, counsel for RC took the deposition of one of Plaintiff's principals, Marc C. Mathis.[1] As set forth in RC's Motion to Compel Discovery (D.I. 31), Mr. Mathis testified regarding the existence of numerous documents that are relevant to the Plaintiff's claims and RC's defenses and responsive to the Document Requests, but had not been produced by Plaintiff. At this deposition and by subsequent correspondence, RC demanded the production of these documents. As a result of Plaintiff's failure to produce them after repeated requests, RC was forced to file the Motion to Compel.

4.  On October 14, 2006, counsel for RC conducted the deposition of Michael A. Rivers, Jr.[2] During his deposition, Mr. Rivers identified numerous additional documents that are integral to the issues in this case and responsive to RC's Document Requests but which had not been produced, as set forth in further detail below. At this deposition and by subsequent correspondence, RC again demanded the production of these documents.

5.  On October 28, 2006, in an apparent attempt to pacify RC, Plaintiff produced 23 e-mails to RC. These e-mails did not, however, include the vast majority of the documents Messrs. Rivers and Mathis identified during their depositions.

---

[1]  At the request of Mr. Mathis, RC agreed to conduct his deposition on the nights of September 25, 2006 and September 26, 2006 in order to accommodate Mr. Mathis' work schedule.

[2]  At the request of Mr. Rivers, RC agreed to conduct his deposition on a Saturday in order to accommodate his work schedule.

6.    On November 1, 2006, in accordance with the Court's Scheduling Order (D.I. 8), RC provided two expert reports to Plaintiff. These reports, however, were preliminary because RC's experts were forced to base their opinions on the few documents Plaintiff had produced. If and when Plaintiff complies with its obligations under the Federal Rules of Civil Procedure and produces the documents its principals testified exist, RC it is possible that its experts will need to amend their reports.

C.    <u>Documents Identified by Michael Rivers, Jr. that Rimmax Has Not Produced[3]</u>

7.    During his deposition, Mr. Rivers identified numerous documents that are integral to the issues in this case and responsive to RC's Document Requests, but have not been produced to RC. For example, Mr. Rivers testified that he had documents showing that he provided RC with confidential information regarding the engineering of the spinners in 2002:

> Q: You don't remember what the subject matter of your discussions were?
> A: Well, we talked about the technical details of the rim . .
> .
> . . .
> Q: These were all in e-mails?
> A: Oh, yeah.
> Q: Do you have copies of these e-mails?
> A: Yes, I do.
> Q: Have you given these to your attorney?
> A: I can't recall.
> . . .
> Q: Can you get copies of all of these e-mails?
> A: Oh, yeah.

---

[3]    RC has not provided transcript excerpts from Mr. Mathis' deposition in this Request as the documents Mr. Mathis identified were discussed in RC's Motion to Compel.

> . . .
>
> Q: Did you ever make a prototype before you went to RC?
>
> . . .
>
> A: The only prototype that we made was something computer-wise, graphically, but not a physical object to touch.
> Q: Do you still have copies of those graphics?
> A: Oh, yes.
> Q: Did you give those to your attorney?
> A: I think I did. But he says if I didn't physically give it to him, I will make sure I provide it to him.

October 14, 2006 Deposition Transcript of Michael Rivers, Jr. ("Rivers Tr.") at 51:22-24; 52:10-23; 117:16-24, 118:1-5. A copy of Mr. Rivers' deposition transcript is attached hereto as Exhibit A.

    8.    Mr. Rivers also testified that he has documents that evidence when he purportedly "invented" the spinners:

> Q: When did you come up with the invention of the spinner?
> A: Oh, man, when did I come up with it? It was in 2002.
>
> . . .
>
> Q: Do you remember when you put on the computer how this would work or when you first tried to figure out when it would work?
> A: I think I do have dates, yes.
> Q: What are those dates?
> A: I don't know what those dates are, but I can provide documentation for that too.

Rivers Tr. at 120:1-121:7.

    9.    Mr. Rivers made similar statements about the existence of documents related to Rimmax's marketing expenses and its tax returns:

> Q: Do you remember the dates of the motorcycle shows you went to?
>
> . . .

4

> A: I mean, we have tickets from the shows. We should
> still have those. Because the booths, they weren't cheap.
> Q: How much were they?
> A: A minimum of 1200...
> Q: So then you would have receipts showing that you paid
> these amounts?
> A: We should.
> . . .
> The Witness: Don't we have the tax returns?
> Q: I don't have the tax returns.
> A: Oh, you don't?
> Q: No.
> The Witness: What's up with the tax returns?
> Mr. Crosse: That's something that Marc [Mathis] has to
> get me.

Rivers Tr. at 20:2, 17-18; 20: 17-18; 21:8-13; 109:8-16.

    10.    Mr. Rivers also testified that he had documents proving that numerous individuals expressed great interest about the spinners on numerous motorcycle related internet chat rooms:

> Q: What bike group forums did you do this on?
> A: There's a lot of them. I couldn't possibly name them
> all.
> Q: Can you name any of them?
> A: Man, they have such odd names.
> . . .
> Q: . . . I'm just asking for your best guess.
> A: Right. Right. I mean their names are so weird. I have
> a listing. I mean, it would be easier for me to send Kester a
> list.
> Q: You have a list of these?
> A: Yeah. I have a list.
> . . .
> Q: Do you remember any of these other than those two,
> Philly and Foxy Riders?
> A: . . . [O]h, there were group forums in Russia. I couldn't
> even understand the language.
> Q: . . . Even though you couldn't understand Russian, you
> could tell they were excited about it?
> A: Mm-hmm. Easily. I mean not even a doubt in my
> mind.
> . . .

5

> Q: So were any of these forums you went to in Chinese?
> A: One of them looked like Chinese . . .
> Q: They were talking about Rimmax Wheels?
> A: Mm-hmm. Yeah. . . . And also they were posting like pictures of the rims on their bikes.
> . . .
> Q: You said you have record of these?
> A: Mm-hmm.
> . . .
> Q: Did you try and look for this information before [to produce to RC]?
> A. No. Nope.

Rivers Tr. 28:23-24; 30:4-10, 31:3-4, 10-14, 32:1-4, 22-33:1-34:1-10.

11. A similar exchange occurred during RC's questioning about Rimmax's business plan:

> Q: Tell me about Rimmax's business plan.
> . . .
> Q: Was any of this written down?
> A: Yes.
> . . .
> A: We had a business plan. I don't know if you have seen it yet. Have you seen it?
> Q: I have not. Did you give a copy of that to your attorney?
> A: He has a copy.
> . . .
> A: . . . It's very complex. I mean, its very detailed. . . . . I would say [the business plan was] about 3-1/2 inches [thick.]

Rivers Tr. at 15:18; 16:6-14; 17:20-21; 18:8-9.

12. Recognizing the gravity of Mr. Rivers' statements about these documents that had not been produced, Plaintiff's counsel, Kester I.H. Crosse, Esq., responded:

> Q: . . . Let me get this straight. You guys [the deponents] are saying I have a lot of stuff that I don't have. So just don't say I have it if you're not sure that somebody gave it to me. Okay?

6

Rivers Tr. at 16:16-19.

13.   Subsequently in Mr. Rivers' deposition, Mr. Crosse again reminded Mr. Rivers about Plaintiff's duty to comply with discovery:

> Mr. Crosse: Can we understand that all of these things that he's asking and saying that you have you're going to search your records and deliver them to Marc [Mathis]?
> The Witness: Right, that's fine.
> Mr. Crosse: And then to me. Okay?
> The Witness: That's fine. That's fine.

Rivers Tr. at 62:12-18.

14.   Notwithstanding these statements by Plaintiff and its counsel that these documents would be produced to RC, to date, RC has not received the vast majority of the documents Messrs. Rivers and Mathis identified during their depositions.

### REQUEST FOR STATUS CONFERENCE

15.   The documents Messrs. Mathis and Rivers identified during their depositions are highly relevant to the core claims in this case, including, *inter alia*, Plaintiff's claim that its principals "invented" the spinners, provided RC with confidential information, and that it suffered lost profits or other damages.[4]  Plaintiff's failure to produce these documents – documents that its principals concede exist, and which are directly responsive to the Document Requests – has caused and will continue to cause substantial prejudice to RC.

---

[4]   Although there are numerous additional documents that Mr. Rivers testified exist but have not been produced, to avoid burdening the Court with numerous similar excerpts from Messrs. Rivers' and Mathis's deposition transcripts, RC has not included them in this application.

7

16.    Because of Plaintiff's discovery failures, RC has been forced to depose Plaintiff's witnesses without the ability to question them about critical documents. Further, RC was forced to incur fees from its experts in drafting reports that its experts may need to revise once Plaintiff complies with its discovery obligations under the Federal Rules.

17.    For these reasons, RC respectfully requests that the Court convene a status conference to address the harm RC continues to suffer and the consequences of Plaintiff's failure to comply with its discovery obligations under the Federal Rules.

Dated: November 10, 2006
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
William H. Sudell, Jr. (#463)
Curtis S. Miller (#4583)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

Attorneys for RC Components, Inc.

544460

## RULE 7.1.1 CERTIFICATE

I hereby certify that counsel for RC Components, Inc. has made a reasonable effort to reach agreement with counsel for the Plaintiff concerning the subject matter of this application but that such efforts have been unsuccessful.

_____
Curtis S. Miller (No. 4583)

November 10, 2006

510832