IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RIMMAX WHEELS, LLC,
a Delaware limited liability company,

               Plaintiff,

         v.

RC COMPONENTS, INC.,
a Kentucky corporation,

               Defendant.

C.A. No. 06-029 (SLR)

**REPLY BRIEF IN SUPPORT OF DEFENDANT RC
COMPONENTS, INC.'S MOTION FOR SUMMARY JUDGMENT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
William H. Sudell, Jr. (No. 463)
Curtis S. Miller (No. 4583)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

Counsel for Defendant RC Components, Inc.

February 5, 2007
Wilmington, Delaware

i.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ii

SUMMARY OF REPLY 1

REPLY 2

I.  RC IS ENTITLED TO SUMMARY JUDGMENT ON THE BREACH OF CONTRACT AND FRAUD CLAIMS. 2

    A.  Plaintiff has Failed to Provide any Facts Disputing that Plaintiff has No Confidential Information or Proprietary Technology Regarding the Spinners. 2

    B.  Plaintiff has Failed to Provide Any Proof Disputing that It Made only Partial Payment for its Order of Spinners, thus Excusing RC's Performance. 4

    C.  Plaintiff has Failed to Produce Any Evidence to Show that Its Breach of Contract Action is Not Precluded by the Statute of Frauds. 6

II.  PLAINTIFF HAS PROVIDED NO COMPETENT EVIDENCE THAT RC INTERFERED WITH PLAINTIFF'S CURRENT OR PROSPECTIVE CONTRACTUAL RELATIONS. 7

III.  PLAINTIFF HAS NOT PRODUCED ANY EVIDENCE SHOWING THAT THERE IS A GENUINE ISSUE OF FACT AS TO ITS INABILITY TO PROVE LOST PROFITS WITH A REASONABLE DEGREE OF CERTAINTY. 9

IV.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF IS NOT THE REAL PARTY IN INTEREST. 9

CONCLUSION 11

ii.

## TABLE OF CITATIONS

Cases

Carrigan v. State of Delaware,
    957 F.Supp. 1376 (D. Del. 1997)      8

Fowler v. Borough of Westville,
    97 F. Supp. 2d 602 (D.N.J. 2000)      2

Hackman v. Valley Fair,
    932 F.2d 239 (3d Cir. 1991)      6

Houser v. Fox Theatres Mgmt. Corp.,
    845 F.2d 1225 (3d Cir. 1988)      8

Lopez-Carrasquillo v. Rubianes,
    230 F.3d 409 (1st Cir. 2000)      2

Marshall v. Sisters of the Holy Family of Nazareth,
    399 F. Supp. 2d 597 (E.D. Pa. 2005)      6

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)      1

Saleh v. City of Warren,
    2004 WL 162557 (6th Cir. Jan. 26, 2004)      2

Trebor Sportswear Co., Inc. v. The Ltd. Stores, Inc.,
    865 F.2d 506 (2d Cir. 1989)      7

Yatzus v. Appoquinimink Sch. Dist.,
    458 F. Supp. 2d 235 (D. Del. 2006)      6

Other Authorities

Fed. R. Civ. P. 56      1, 2, 4, 11

Ky. Rev. St. § 355.2-511(1)      5

1.

## SUMMARY OF REPLY

Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules") is unequivocal on the burden of a non-movant to defeat a motion for summary judgment. It requires the non-movant to come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Plaintiff has utterly failed to meet this burden. Indeed, in the Opposition, Plaintiff does not even attempt to rebut any of the grounds on which RC has moved for summary judgment by argument or even allegation, let alone proof.

Despite the existence of hundreds of pages of deposition transcripts and written discovery, none of this evidence makes its way into the Opposition to show the existence of a disputed issue of material fact. Its absence is telling.

Plaintiff submits no evidence that could raise a genuine issue of material fact as to record evidence submitted by RC Components, Inc. ("RC") which proves that 1) Plaintiff has no confidential or proprietary technology in the spinners as the technology was publicly known prior to Plaintiff's alleged "invention"; 2) Plaintiff only made partial payment for its orders to RC, thus excusing RC's performance on the remaining unpaid portion of Plaintiff's orders; 3) there is no written contract governing any agreement by RC to manufacture spinners for Plaintiff and, thus, the breach of contract claim is precluded by the statute of frauds; 4) there is no proof that RC interfered with Plaintiff's current or prospective contractual relations; 5) Plaintiff has completely failed to establish lost profits within a reasonable degree of certainty; and 6) Plaintiff is not the real party in interest in this lawsuit. Instead, and because it does not have any credible evidence sufficient to defeat summary judgment, Plaintiff attempts to get its case to a jury by submitting affidavits from its principals (one of which is unsigned (the affidavit of Michael

2.

Rivers, Jr.) and, thus, should be disregarded by the Court[1]) that are in large part verbatim recitations of the allegations of the Complaint.

To defeat summary judgment, Rule 56 requires more. Lopez-Carrasquillo v. Rubianes, 230 F.3d 409 (1st Cir. 2000)(holding that an affidavit that merely repeats the conclusory allegations of the complaint is insufficient to create a genuine issue of material fact and, thus, concluding that summary judgment was warranted); Saleh v. City of Warren, 2004 WL 162557 (6th Cir. Jan. 26, 2004)(holding that "the affidavits are in large part verbatim recitations of Plaintiffs' complaint and thus insufficient to establish a genuine issue of material fact")(citation omitted). Plaintiff has failed to submit even a "mere scintilla" of evidence to raise a genuine issue of material fact as to any of the bases on which RC has moved for summary judgment and, accordingly, the Court should enter summary judgment in RC's favor.

## REPLY

**I.    RC IS ENTITLED TO SUMMARY JUDGMENT ON THE BREACH OF CONTRACT AND FRAUD CLAIMS.**

### A.    Plaintiff has Failed to Provide any Facts Disputing that Plaintiff has No Confidential Information or Proprietary Technology Regarding the Spinners.

In the Opening Brief in Support of Defendant RC Components, Inc.'s Motion for Summary Judgment (the "Opening Brief"), RC submitted substantial evidence establishing that Plaintiff cannot prevail on its claims for breach of contract and fraud because they are predicated on the assumption that Plaintiff is the exclusive owner of confidential information and

---

[1]    See Fowler v. Borough of Westville, 97 F. Supp. 2d 602, 608 (D.N.J. 2000)(refusing to consider unsigned and unsworn affidavits in opposition to summary judgment).

3.

proprietary technology involving the spinners – an assumption that is contrary to the uncontroverted evidence. Opening Brief at 8-12.

The evidence in this case has demonstrated that: 1) Plaintiff cannot have confidential information or proprietary technology regarding the spinners because another motorcycle manufacturer, Amen Motorcycles, manufactured, assembled, and publicly displayed spinners that utilize the same "technology" as the spinner RC manufactured for Plaintiff approximately a year prior to Plaintiff's claimed "invention." Opening Brief at p. 9-10. It is obvious that if another company produced and publicly displayed the spinners prior to Plaintiff's claimed "invention," Plaintiff cannot assert that the spinner is its invention and proprietary and confidential property[2]; and 2) under the terms of section 2(iv)(b) of the Agreement, Plaintiff has

---

[2]    As set forth in the Opening Brief, under the terms of the Agreement Regarding Confidential Information and Intellectual Property (the "Agreement"), if the spinner technology was publicly known prior to Plaintiff's alleged "invention," Plaintiff cannot claim that it is the inventor and exclusive holder of this intellectual property. Opening Brief at p. 8. The only person that appears to disagree with this statement is Mr. Mathis, who apparently believes that he can claim to be the sole and exclusive owner of any intellectual property notwithstanding the fact that it was already invented and publicly known. During his deposition, the following colloquy on this subject took place:

Q: . . . [I]f information was in the public domain, it was known to everybody in the world, could Rimmax then claim that that was their confidential information?

A: Well, if it's pertaining to a spinner, I would say so.

. . .

Q: If you didn't know that some piece of information was publicly known, but everyone else did, you're saying that Rimmax Wheels could still say that that was their confidential information?

A: I would say so.

Mathis Tr. at p. 46:3-22.

Q: So this only matters if Rimmax, under your concept of confidential information, it only matters if Rimmax already previously knew that this product existed?

(Continued . . .)

4.

no confidential information or proprietary technology involving the spinners because the spinner technology became publicly and openly known through a competitor's reverse engineering of the spinner RC manufactured for Plaintiff and through no fault of RC. Opening Brief at p. 11-12.

The Opposition does not even attempt to rebut this evidence and avoids providing any response to the preceding undisputed facts. Due to Plaintiff's failure to provide any evidence raising a dispute on these matters, Rule 56 mandates that summary judgment be entered in favor of RC on the breach of contract and fraud claims of the Complaint, as both are predicated on Plaintiff's assertion that RC wrongfully used its confidential information and proprietary technology. Fed. R. Civ. P. 56(e) (providing that to defeat a motion for summary judgment, the non-movant "must set forth specific facts showing that there is a genuine issue for trial.").

**B.    Plaintiff has Failed to Provide Any Proof Disputing that It Made only Partial Payment for its Order of Spinners, thus Excusing RC's Performance.**

In the Opening Brief, RC provided substantial evidence that Plaintiff made only partial payment for its order of 54 sets of spinners, thus excusing any further performance by RC. Opening Brief at 12-14. This evidence consisted of Plaintiff's principals' testimony that they only paid between $80,000 to $85,000 for their orders of 54 sets of rims from RC and that the cost for each set of spinners was between $2,400 to $3,600. Opening Brief at p. 13. Even

---

(. . . continued)
        A: . . . I would say so.

        Mathis Tr. at p. 43:17-45:4. Under Mr. Mathis's definition of confidential information, Plaintiff could claim that it has the exclusive right to market and sell the light bulb (notwithstanding Thomas Edison's invention in 1879) if Plaintiff had no prior knowledge of its existence.

5.

assuming that Plaintiff ordered only the least expensive spinners, it still was required to pay $129,600 to RC, thus making its payment only a partial payment. It is also undisputed that the partial payment was insufficient to pay for the new materials and parts inventory RC purchased as a result of Plaintiff's order of 54 sets of spinners. Opening Brief at p. 14 n. 8. As a result, under the Uniform Commercial Code (the "UCC"), as adopted by Kentucky, RC was excused from any further performance. See Ky. Rev. St. § 355.2-511(1).[3]

     In the Opposition, Plaintiff provided no contrary evidence sufficient to raise a disputed fact about its failure to pay in full for its 54 orders of spinners. Instead, Plaintiff submits the affidavit of Marc Mathis which makes the conclusory assertion that "RC refuses and has failed to deliver 34 of the 54 sets of Rimmax's spinners *for which Rimmax paid in full*." Opposition at p. 14 (emphasis added). Apart from the wholly conclusory nature of this statement, it is contrary to Mr. Mathis's sworn deposition testimony that Plaintiff made only partial payment for its orders. See Mathis Tr. At 93:3-10, 88:10-89:19. Thus, under Third Circuit precedent, Mr. Mathis's affidavit constitutes a "sham affidavit" that cannot preclude the entry of summary judgment in RC's favor. See Hackman v. Valley Fair, 932 F.2d 239, 241 (3d

---

[3]    As discussed in the Opening Brief, because this Court has subject matter jurisdiction over this action pursuant to diversity jurisdiction, the Court applies the most significant relationship test to determine which state's substantive law governs the counts of the Complaint. Although the breach of contract claim involving RC's alleged use of the spinner technology is governed by the Agreement's choice of law provision (if it is found to be enforceable), there is no contract covering any agreement by RC to manufacture spinners and, thus, the choice of law is determined by application of the most significant relationship test. Under this test, because the design, manufacture, sale, and shipping of the spinners took place in Kentucky, Kentucky law governs this part of count one of the complaint along with the tort counts of the Complaint.

The Opposition completely ignores the question of which state's substantive law applies and, instead, assumes that Delaware substantive law governs all of the counts of the Complaint. Although RC disagrees with this assumption, RC's research has shown that there is no material difference between Kentucky and Delaware substantive law on the relevant provisions of the UCC.

6.

Cir. 1991)("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists"); Yatzus v. Appoquinimink Sch. Dist., 458 F. Supp. 2d 235, 247 (D. Del. 2006)(Robinson, C.J.)(refusing to consider an affidavit that was submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony"); Marshall v. Sisters of the Holy Family of Nazareth, 399 F. Supp. 2d 597, 598-99 (E.D. Pa. 2005)(disregarding the statements in an affidavit submitted in opposition to a motion for summary judgment that contradicted the affiant's deposition testimony).

Because Plaintiff has not submitted any evidence raising a genuine issue of fact regarding its failure to pay in full for the orders it made to RC, RC is entitled to summary judgment on this breach of contract claim as well.

> **C.    Plaintiff has Failed to Produce Any Evidence to Show that Its Breach of Contract Action is Not Precluded by the Statute of Frauds.**

Summary judgment on the breach of contract claim that is based on the allegation that RC did not timely deliver the spinners and by refusing to return $31,096.80 to Plaintiff is also appropriate because Plaintiff has failed to produce any evidence that this claim is not barred by the statute of frauds.

As it does consistently throughout the Opposition, Plaintiff completely ignores the substantial proof submitted by RC, which includes the sworn deposition testimony of Plaintiff's principals, demonstrating that there was no written contract governing the terms of any agreement by RC to manufacture and supply spinners for Plaintiff. See, e.g., Mathis Tr. at 128:19-22 (testifying that "there were obviously no guidelines governing this relationship [between RC and Plaintiff]"). As stated in the Opening Brief, it is undisputed that RC refused to

execute the Supply Agreement Plaintiff sent to RC that would have governed this aspect of the parties' relationship.  Opening Brief at 14.  Because there is no dispute on the absence of a written contract, Rule 56 mandates the entry of summary judgment on this ground as well.  See Trebor Sportswear Co., Inc. v. The Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989)(affirming the district court's grant of summary judgment to a defendant on a breach of contract claim because the plaintiff failed to submit proof of a writing sufficient to satisfy the statute of frauds).

## II.    PLAINTIFF HAS PROVIDED NO COMPETENT EVIDENCE THAT RC INTERFERED WITH PLAINTIFF'S CURRENT OR PROSPECTIVE CONTRACTUAL RELA-TIONS.

RC is also entitled to summary judgment on the third count of the Complaint, interference with contractual relations.  As set forth in the Opening Brief, RC is entitled to summary judgment because Plaintiff: 1) has provided no proof that RC wrongfully interfered with Plaintiff's current customers or prospective customers; and 2) RC has a complete defense because it stopped manufacturing and delivering the spinners due to Plaintiff's failure to pay in full for its orders.  Opening Brief at 15-17.

In the Opposition, Plaintiff makes two attempts to defeat summary judgment on this count: First, it submits the affidavit of Mr. Mathis, which asserts that RC improperly told third parties not to purchase spinners from Rimmax and to buy them from RC.  Second, Plaintiff argues that RC's refusal to ship all of the sets of spinners Plaintiff ordered was wrongful.  Neither of these assertions preclude the entry of summary judgment for at least two reasons.

First, the affidavit of Mr. Mathis is 1) inadmissible hearsay and 2) is not based on his personal knowledge; thus, it should be disregarded by this Court.  See Houser v. Fox Theatres Mgmt. Corp., 845 F.2d 1225, 1230 (3d Cir. 1988)(holding that "the affidavits relied on

8.

by the Housers contain inadmissible hearsay, and cannot be considered in the context of a summary judgment motion."); Carrigan v. State of Delaware, 957 F.Supp. 1376, 1382 (D. Del. 1997)(refusing to consider an affidavit discussing rumors submitted in opposition to summary judgment as it was not based on the affiant's personal knowledge).  Mr. Mathis's affidavit states that "Rimmax . . . discovered RC has been communicating with Rimmax's customers, telling them to buy spinners from RC rather than Rimmax[.]"  Mathis Affidavit at ¶ 39.  Although it is not clear from the face of the affidavit that he is basing his statement on hearsay, when asked about this allegation at his deposition, Mr. Mathis revealed that the foundation for his statement was "a rumor going around in the industry that people were contacting RC Components, and RC was telling them that they were going to be producing the spinners so don't buy from Rimmax Wheels.  *This was just a rumor we were hearing*."  Mathis Tr. at 123:9-14 (emphasis added).  When asked by RC's counsel about who he heard these rumors from, Mr. Mathis testified that he did not remember.  Mathis Tr. at 127:3-4.  Because this inadmissible hearsay is the only "evidence" proffered by Plaintiff to show that RC wrongfully contacted Plaintiff's customers, summary judgment in RC's favor is appropriate.

Second, as set forth above, see supra section I(B), RC's reason for refusing to continue to manufacture and ship spinners to Plaintiff was not wrongful – it was due to Plaintiff's failure to pay for its orders.  As stated in the Opening Brief, applicable law provides that a party has a complete defense to a claim of interference with contractual relations if it acted to protect a legitimate interest of its own.  Opening Brief at p. 17.  RC's cessation in manufacturing spinners, done to prevent any further loss, was unquestionably an act of protecting its legitimate interests.  Because Plaintiff has produced no contrary evidence sufficient

9.

to raise a genuine dispute of fact on this issue, RC is entitled to summary judgment on this count of the Complaint as well.

### III.  PLAINTIFF HAS NOT PRODUCED ANY EVIDENCE SHOWING THAT THERE IS A GENUINE ISSUE OF FACT AS TO ITS INABILITY TO PROVE LOST PROFITS WITH A REASONABLE DEGREE OF CERTAINTY.

Summary judgment on Plaintiff's claim for lost profits damages is also appropriate.  As stated in the Opening Brief, to establish a claim for lost profits damages, a plaintiff must be able to establish such damages to a reasonable certainty.  Opening Brief at 17-20.  RC, through Plaintiff's principals' deposition testimony, Plaintiff's interrogatory responses, and the expert report of Tara Stephenson, has demonstrated that Plaintiff's claim for lost profits damages is wholly speculative and cannot be proven with any certainty.

The Opposition, in contrast, is completely silent as to Plaintiff's demand for lost profits damages.  The only statements in the Opposition that can be construed as addressing this issue merely assert that "Rimmax claims compensatory . . . damages in an amount according to proof."  Opposition at p. 17, 18.  The problem with these statements is that Plaintiff has provided *no proof* of lost profits.  Accordingly, summary judgment on Plaintiff's claim for lost profits damages must be granted.

### IV.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF IS NOT THE REAL PARTY IN INTEREST.

Finally, the Court should grant RC summary judgment on all of the Claims regarding its claimed intellectual property because Plaintiff is not the real party in interest with respect to such claims.  Opening Brief at p. 20-21.  As stated in the Opening Brief, Michael Rivers, Jr., one of Plaintiff's principals, testified during his deposition that the spinner

10.

technology is owned by Mr. Mathis and himself, not Plaintiff.  Opening Brief at 20.  Mr. Rivers

testified that he never assigned this technology to Plaintiff.

As with virtually every ground on which RC has moved for summary judgment,

Plaintiff fails to provide any response.  Accordingly, dismissal of the Complaint pursuant to Rule

17(a) of the Federal Rules is appropriate.[4]

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[4]    Additionally, Plaintiff has not contested that once the Complaint is dismissed pursuant to
Rule 17(a), Mr. Mathis is precluded from attempting to bring the same complaint under
his own name because he does not have standing to do so.  Opening Brief at 21.  As set
forth in the Opening Brief, Mr. Mathis filed for Chapter 7 bankruptcy on October 12,
2005, did not list any intellectual property related to the spinners on his schedules, and
received a discharge on March 24, 2006.  As a result, under applicable precedent, the
intellectual property remains property of the Chapter 7 Trustee and the estate and Mr.
Mathis has no standing to bring a cause of action based on it.  Opening Brief at p. 21.

11.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant RC summary judgment on all counts of the Complaint.  Plaintiff has failed to provide any credible facts in opposition to the evidence submitting in support of summary judgment in the Opening Brief and, therefore, Rule 56 mandates the entry of summary judgment in RC's favor.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
William H. Sudell, Jr. (No. 463)
Curtis S. Miller (No. 4583)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

Counsel for Defendant RC Components, Inc.

722165.2